SANDERS, Janet L., J.
In a Complaint filed July 31, 2012, the plaintiffs, various organizations committed to assisting the homeless, sought to enjoin the defendant, the Massachusetts Department of Housing & Community Development (DHCD), from promulgating emergency regulations allegedly limiting the availability of emergency housing for families whose health and safety are at risk in their current housing situation. On August 2, 2012 — the day that the regulations were to go into effect — this Court held a hearing on plaintiffs’ Motion for a Preliminary Injunction. Given the shortness of time, defense counsel was able only to present a series of affidavits in opposition to the motion and to make oral argument. This Court also considered certain affidavits submitted by plaintiffs, two memoranda of law in support of the motion, and oral argument by counsel. Given the need for quick action, I issued my ruling on the motion the next day, denying it in a margin endorsement. This opinion briefly sets forth the Court’s reasoning, based on that information I was capable of digesting within the time frame allowed.
Disposition of this motion turns on the meaning— and the legal significance — of a line item in the Fiscal Year 2013 budget state budget, St. 2012 c. 139 §2, item 7004-0101. The line item authorizes expenditures for emergency shelter for homeless families with children; it also sets forth the four categories of families who must be eligible for such assistance. The fourth category consists of those families who are in a housing situation “where there is a substantial health and safety risk to the family that is likely to result in significant harm...” The line item goes on to say that “no later than 15 days in advance of implementation of this item,” the DHCD shall provide to certain legislative committees and members the “written criteria to be used to determine if a substantial health and safety risk is likely to result in significant harm . . .” The emergency regulations at issue do exactly that, defining what constitutes a heath and safety risk (albeit in a manner which narrows eligibility). Fifteen days before their effective date of August 2, 2012, DHCD submitted these proposed regulations to the legislative representatives identified in the line item.
The plaintiffs argue that the 15 days notice that DHCD gave was inadequate, however; that is because in the same line item two pages later, it is stated that no changes in regulations (except for those which expand benefits) may be made without providing a written report to the legislature 60 days before DHCD promulgates the changes. Plaintiffs contend that this 60-day requirement effectively trumps the 15-day notice proviso because it is prefaced with the words “notwithstanding any general or special law to the contrary ...” Because the emergency regulations do not expand benefits but in fact narrow them, the plaintiffs maintain that the regulations could not become effective until September 17, 2012 or 60 days from the date that DHCD gave notice.
The line item is certainly not a model of clarity, but DHCD’s position that only 15 days notice was required is not an unreasonable one. That proviso expressly applies to the written criteria DHCD plans to use relative to the fourth category of families with children eligible for emergency housing. The criteria are to be presented “15 days in advance of implementation of this item,” which can be reasonably construed to refer to the date upon which DHCD intends to have the criteria take *337 effect. Although other constructions are possible (including the one that the plaintiffs favor), this Court is not convinced that the plaintiffs’ position is strong enough to justify the extraordinary remedy that they seek.
There are additional problems with plaintiffs’ position, even if their reading of the line item is correct. First, it is not clear to this Court that a failure to give the required notice means that the regulations are invalid. Certainly, the line item does not say that. Second, the intended purpose of the notice provision is to give legislators a chance to comment and to appropriate more money if necessary to avert a reduction in benefits. See Wilson v. Comm’r of Transitional Assistance, 441 Mass. 846, 858 (2004). It does not confer any specific rights on those individuals who could be affected by the regulations, much less does the line item create any private right of action. Finally, plaintiffs concede that the line item does not give legislators a veto power over the emergency regulations, and that DHCD’s proposals could very well have remained the same even if 60 days advance notice had been given. Thus the harm from a failure to enforce this notice provision is not so much that certain families formerly eligible for emergency housing are not eligible under the emergency regulations. Rather it is that they — and advocacy organizations like the plaintiffs — have been deprived of an additional 45 days to lobby for changes in those regulations. Given that there is no assurance such lobbying would have resulted in any changes, the harm in failing to comply with the full 60 days notice would appear to be somewhat speculative.
The plaintiffs do point out that even if no changes were made, the extra 45 days would mean that families who would not be eligible for temporary housing under the emergency regulations could qualify for such housing before those regulations actually took effect. How many families that would be is not at all clear. In any event, this Court must weigh the harm to plaintiffs (or the families they assist)[1] if no relief is granted against the harm to the defendant if the plaintiffs’ motion was allowed. According to an affidavit from DHCD’s Chief Financial Officer, the DHCD in conjunction with the legislature developed the fiscal year 2013 appropriation figures on the assumption that DHCD could alter its regulations concerning health and safety risk 15 days after the budget became law. To apply a 60-day review period would cost another $3 million, and thus alter a budget that was carefully crafted to reduce expenditures for hotels used as emergency placements for families at the same time that funding for other housing assistance programs was increased. Moreover, hotel/motel space available for emergency housing is shrinking, according to another DHCD representative; as Robert Pulster states in his affidavit, if the more open-ended historic eligibility standards continued in effect through September 17, the need would exceed current capacity, “and there would be no space available for any family regardless of the exigency of their situation.” At the veiy least, these affidavits illustrate the complexify of the policy decisions that have to be made — decisions that ultimately are best left to the agency charged with that responsibility.
For these and for other reasons articulated by defense counsel at the hearing on the motion, this Court concluded that the plaintiffs’ Motion for a Preliminary Injunction must be DENIED.

 DHCD asserts that the named plaintiffs do not have standing. Because this motion can be decided on other grounds, this Court does not address this issue.